UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-22606-ALTMAN

**ACF-AI ORIGINATION, LLC**,

    *Plaintiff*,

v.

**TIENDAS SORIANA S.A. DE C.V.**,

    *Defendant*.

_____/

## ORDER GRANTING MOTION TO VACATE CLERK'S DEFAULT

Our Plaintiff, ACF-AI Origination, LLC ("ACF"), brought this action against Tiendas Soriana S.A. de C.V. ("Soriana") "for breach of contract, fraudulent misrepresentation, [and] negligence . . . arising from business transaction that including the purchase and assignment of receivables[.]" Amended Complaint [ECF No. 14] at 1. Soriana didn't timely appear in this action, so ACF moved for (and received) a Clerk's entry of default against Soriana on February 10, 2025. *See* Clerk's Entry of Default [ECF No. 43]. On March 6, 2025, ACF moved for the entry default judgment against Soriana. *See* Motion for Default Final Judgment ("Default Motion") [ECF No. 49].

A lawyer representing Soriana appeared in this case later that day, *see* Notice of Appearance [ECF No. 50], and subsequently moved to set aside the Clerk's default under FED. R. CIV. P. 55(c), *see* Motion to Set Aside Clerk's Default ("Motion") [ECF No. 54]. Soriana argues that it can establish "good cause for setting aside the Clerk's default due to what is likely defective service." *Id.* at 3. ACF responded to the Motion, *see* Response in Opposition to Motion to Set Aside Clerk's Default ("Response) [ECF No. 55], and Soriana replied to the Response, *see* Reply to Plaintiff's Response in Opposition ("Reply") [ECF No. 56]. After careful review, we'll **GRANT** Soriana's Motion, **VACATE** the Clerk's default, and **DENY as moot** ACF's Default Motion.

## THE LAW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defense, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). A party can move to "set aside an entry of default" upon a showing of "good cause." FED. R. CIV. P. 55(c). Although "[g]ood cause is a mutable standard, varying from situation to situation[,]" the Eleventh Circuit has identified several factors that district courts should consider whether: (1) "the default was culpable or willful"; (2) "setting [the default] aside would prejudice the adversary"; (3) "the defaulting party presents a meritorious defense"; (4) "there was a significant financial loss to the defaulting party"; and (5) "the defaulting party acted promptly to correct the default." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996); *see also Morford v. Cattelan*, 2022 WL 1084733, at *3 (S.D. Fla. Mar. 22, 2022) (Goodman, Mag. J.) (same).

On one hand, a movant "must make only a 'bare minimum showing' in support of its claim to set aside default[,]" *Rozo v. Perfect Multi, LLC*, 2014 WL 12628471, at *2 (S.D. Fla. Jan. 28, 2014) (Rosenbaum, J.) (quoting *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988)), since "defaults are seen with disfavor because of the strong policy of determining cases on the merits." *Fla. Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993). On the other hand, "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Compania Interamericana*, 88 F.3d at 951–52 (citing *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194–95 (6th Cir. 1986)).

## ANALYSIS

Before us is a two-part problem. The first issue we must sort out is whether we should set aside the Clerk's default against Soriana under FED. R. CIV. P. 55(c). We can only reach the second question—whether ACF has shown it is entitled to default judgment—if we *don't* vacate the Clerk's

default. Soriana says that we must set aside the Clerk's default because it "was not the product of [its] culpable or willful actions[.]" Motion at 5. While Soriana admits that it has known about this action since February 2025, it explains that it "was expecting formal service of the lawsuit in accordance with the Hague Convention" and "was unaware that this Court could conceivably order and allow that service be made on Soriana via any other means[.]" *Id.* at 2–3. Once it learned that "the case was proceeding against Soriana in normal course, Soriana immediately acted to hire counsel to defend the lawsuit." *Id.* at 5–6. ACF (correctly) responds that it received permission from the Court to serve Soriana by email and that this alternative method of service was proper. *See* Response at 4 ("The Court found alternative service appropriate, and Plaintiff fully complied. [Soriana's] suggestion that it was 'surprised' by service via email is irrelevant—actual notice was achieved, and no rule or treaty prohibits the method used."). Moreover, ACF points out that Soriana "became aware of this litigation in February 2025" yet it "[i]nexplicably waited over a month to respond[.]" *Ibid.* We conclude that Soriana's explanation is sufficient to cross Rule 55(c)'s low threshold.

Of the five factors the Eleventh Circuit listed in its *Compania Interamericana* decision, four of them weigh in favor of setting aside the default.[1] *First*, ACF wouldn't be prejudiced if we set aside the default. "Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55. Instead, a plaintiff would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties." *Griffin IT Media, Inc. v. Intelligentz Corp.*, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16, 2008) (Marra, J.) (cleaned up) (quoting *Burrell v. Henderson*, 434 F.3d 826, 835 (6th Cir. 2006)). ACF focuses on three potential sources of prejudice in its Response: "delay[ed] enforcement of time-sensitive payment obligations," "spoliation of critical electronic

---

[1] One of the factors, whether "there was a significant financial loss to the defaulting party," is not discussed in any of the parties' briefing. *See generally* Motion; Response; Reply. Since no evidence or argument was presented on this issue, we'll presume that this factor is neutral and does not weigh for or against vacating the Clerk's default.

evidence," and "increas[ed] litigation costs through duplicative international service efforts." Response at 6 (citing *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990)). None of these (either individually or in tandem) are enough to establish prejudice. "[I]ncreased costs in having to litigate are not sufficient to establish prejudice because setting aside default will *always* increase litigation cost to the plaintiff because the plaintiff will actually have to litigate the case." *Sherrard v. Macy's Sys. & Tech., Inc.*, 724 F. App'x 736, 739 (11th Cir. 2018) (cleaned up). And ACF's conclusory (and factually unsupported) allegation that setting aside the default risks spoliation of critical evidence is likewise insufficient. *See, e.g.*, *Uniq Branch Off. Mex., S.A. de C.V. v. Steel Media Grp., LLC*, 2023 WL 2770895, at *2 (S.D. Fla. Apr. 4, 2023) (Scola, J.) ("The Plaintiffs make a conclusory statement that 'there is a possibility that this delay in discovery has resulted in the loss of evidence and depletion of [the Defendants'] assets to satisfy any judgment against them,' but the Plaintiffs offer no factual support or even argument to support this statement. Therefore, this statement alone is insufficient to justify maintaining the default judgment, and the Plaintiffs provide no other support for a finding of the kind of prejudice necessary to sustain default."). We thus find that ACF will not be prejudiced if we set aside the Clerk's default.

*Second*, Soriana might have a "meritorious defense." Soriana alleges that the documents ACF relies upon in its Amended Complaint "that were purportedly signed by a 'representative' of Soriana are fraudulent[.]" Response at 6. Soriana also conducted an internal audit of its records and determined that many of the invoices at issue "do not exist in [Soriana's] accounting system nor in Fresh Season's account within the system" or "were officially listed as "CANCELLED' by Fresh Seasons[.]" *Id.* at 8; *see also* English Translation of Accounting Opinion [ECF No. 57-1] at 19–20 (summarizing conclusions of audit). ACF suggests that these defenses can't be meritorious because they aren't "supported by specific factual allegations" and rely on a "self-serving" audit that is both "inadmissible" and "legally irrelevant." Response at 4–5. But this rebuttal is premised on the wrong standard. "'A

4

defendant's burden to show the existence of a meritorious defense is extremely light on a motion to set aside an entry of default.' For purposes of setting aside a Clerk's default, 'the movant need only provide "a hint of a suggestion" that the case has merit.'" *Morford*, 2022 WL 1084733, at *6 (cleaned up) (first quoting *Regal Nails, Salon & Spa, LLC v. Ha*, 2021 WL 4976529, at *5 (S.D. Fla. Sept. 9, 2021) (Maynard, Mag. J); and then quoting *Griffin IT Media*, 2008 WL 162754, at *3). That's very different from the "meritorious defense" standard in the context of vacating a *default judgment*, which requires the movant to "make an affirmative showing of a defense that is likely to be successful." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1296 (11th Cir. 2003). Here, Teindas's "mere suggestion" that ACF's claims are tainted by forged documents and non-existent invoices is sufficient to establish a meritorious defense. *See Go Relax Travel, LLC v. Process Am., Inc.*, 2012 WL 13014700, at *2 (S.D. Fla. July 13, 2012) (Cooke, J.) ("Likelihood of success is not the measure with respect to the sufficiency of a meritorious defense when weighing a vacatur of the Clerk's entry of default. . . Here, Process America provided that suggestion by asserting that it substantially complied with its obligations under the applicable agreements.").

*Third*, Soriana moved quickly to correct the default. The Clerk entered default against Soriana on February 10, 2025. *See* Clerk's Entry of Default [ECF No. 42]. Soriana says they became aware of the Clerk's default (and this litigation) "in late February of 2025." Motion at 3; *see also* Declaration of Gabriel Eugenio Lopez Arroyo [ECF No. 54-1] ¶ 5 ("Toward the end of February of 2025, and despite never receiving formal service of the lawsuit, Soriana learned that the instant proceedings were moving forward against Soriana."). ACF then moved for the entry of default judgment less than a month after the default, on March 6, 2025. *See generally* Default Motion. That *same day*, counsel for Soriana appeared in this action and filed a motion for extension of time to respond to the Default Motion. *See* Motion for Extension of Time [ECF No. 51]. Soriana then timely filed the instant Motion on March 19, 2025. *See generally* Docket. Although Soriana might have been able to appear sooner, the evidence shows that

Soriana hired counsel and appeared in this action within weeks of learning about the Clerk's default—that's sufficiently prompt to set aside the default. *See, e.g.*, *Go Relax Travel*, 2012 WL 13014700, at *3 ("A two-week delay is not unreasonable."); *Morford*, 2022 WL 1084733, at *8 ("Cattelan filed the instant Motion seeking to set aside the Clerk's default on November 17, 2021, approximately 19 days after learning of this lawsuit. Based on this timeline, the Undersigned finds that Cattelan acted in a reasonably prompt manner and did not unduly delay in seeking relief from the Court."); *Pliteq, Inc. v. Mostafa*, 2024 WL 3070171, at *15 (S.D. Fla. June 20, 2024) (Elfenbein, Mag. J.) ("The clerk's default was entered on March 29, 2024, and Defendant filed the Motion to Vacate and Quash on April 25, 2024. That means Defendant waited less than a month to attempt to correct the clerk's default. I find that Defendant acted promptly.").[2]

That brings us to the final—and most important—factor: whether Soriana's default was culpable or willful. *See Compania Interamericana*, 88 F.3d at 951–52 ("[I]f a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief."). Soriana frames their failure to appear in this case as an honest mistake. Soriana says that, as "a large corporation in Mexico with an in-house legal department," it was reasonable for Soriana "to expect that any foreign-based litigation against [it] would need to be formally served in accordance with the requirements of the Hague Convention, and that important notices concerning any such litigation would be, at the very least, sent to its corporate headquarters located in Monterrey." Motion at 5. Instead, Soriana was "surprised" when ACF effected service by emailing Claudia Gonzalez, "whose email address is listed on Soriana's website for purposes of receiving contact emails from prospective investors." *Id.* at 5–6; *see also id.* at 6 ("Not only were actual

---

[2] ACF accuses Soriana of "[i]nexplicably wait[ing] over a month to respond and [not] appear[ing] until March 19, 2025." Response at 4. This is a bit of a disingenuous claim. Counsel for Soriana appeared weeks earlier, on March 6, 2025, *see* Notice of Appearance [ECF No. 50], and then moved for an extension of time to respond to the Default Motion—which we granted. *See* Paperless Order Granting Motion for Extension of Time [ECF No. 52].

representatives of Soriana not emailed, but they were not aware that an email could effectuate service."). However, once Soriana realized this case was proceeding against it "in normal course . . . [it] immediately acted to hire counsel and defend the lawsuit." *Id.* at 6. ACF counters that Soriana's "size, internal legal department, and resources make its neglect particularly inexcusable" and accuse Soriana of "[s]trategic silence." Response at 4.

To understand the parties' arguments, we must spend some time explaining the procedural history behind ACF's attempt to serve Soriana. On November 21, 2024, ACF moved to serve Soriana through email rather than effecting formal service under the Hague Convention. *See* Motion for Leave to Effectuate Alternative Service of Process [ECF No. 12] at 2 ("Accordingly, Plaintiff seeks an order from this Court authorizing initial service of process on [Soriana], a Mexican company located in Mexico, via electronic email, as such service is not prohibited by any international agreement, and it is calculated to provide notice and an opportunity for Soriana to respond."). ACF proposed serving Soriana through three email addresses—david.gamboa@soricorp.mx, everardo.avelar@soricorp.mx, and claudiaigr@soriana.com—since "[a]ll emails sent to and received from Soriana to conduct business with Plaintiff in connection to the matters at issue in this lawsuit, were done though david.gamboa@soricorp.mx. and everardo.avelar@soricorp.mx" and Soriana "lists the names of its management team, along with a designated email address as the main point of contact under Claudia Gonzalez Romero, with email address claudiaigr@soriana.com." *Id.* at 5. Judge Rodolfo A. Ruiz, the predecessor judge in this case, granted ACF's motion after finding that: (1) service by email "is not prohibited under international agreement in this case"; (2) ACF "has shown that e-mail is likely to reach Soriana"; and (3) "[f]ormal service under the Hague Convention would also be unreasonably inefficient and hinder the effective adjudication of this case" because "[t]he estimate time for service would be between one to two years." Order Granting Motion for Alternative Service [ECF No. 13] at 2–3.

On November 27, 2024, ACF filed a notice explaining that "[t]he email sent to claudiaigr@soriana.com was successfully delivered. However, the emails sent to david.gamboa@soricorp.mx and everardo.avelar@soricorp.mx were not successfully delivered, as both emails were returned as undeliverable." Notice of Compliance [ECF No. 17] at 1–2. However, on January 13, 2025, ACF realized that "[t]he email with service was sent to the email address claudiagr@soriana.com instead of claudiaigr@soriana.com. An 'I' was inadvertently omitted between 'claudia' and 'gr.'" Motion to Set Aside Clerk's Default [ECF No. 37] at 2. ACF filed a new notice on January 17, 2025, informing us that it successfully effected service on claudiaigr@soriana.com. *See* Second Notice of Compliance [ECF No. 39] at 1–2. Soriana's position is that service via email is illegitimate and illegal, so it had no reason to believe it should have appeared in this case any sooner than it did. *See* Motion at 2–3 ("At all times material, Soriana was expecting formal service of the lawsuit in accordance with the Hague Convention. Soriana was unaware that this Court could conceivably order and allow that service be made on Soriana via any other means, and certainly did not expect or anticipate service could be formally accomplished via a singular email sent to one (1) email address designated on Soriana's website for communications from potential investors."); Reply at 2 ("Indeed, U.S. Courts have recognized that Mexico objected to the alternative methods of service . . . and thus found or concluded that service through Mexico's Central Authority is the exclusive method by which a plaintiff can serve a defendant located in Mexico.").

Let's get one thing out of the way: Our job right now isn't to determine if ACF properly served Soriana. We'll leave that issue—if Soriana even decides to pursue it—for another day. *See* FED. R. CIV. P. 12(b)(4) (authorizing a motion to dismiss based on "insufficient process"). But courts have held that a defendant's failure to timely appear in an action isn't "culpable or willful" if it reasonably believes (even mistakenly) that it wasn't properly served. *See Pliteq*, 2024 WL 3070171, at *14 ("First, nothing in the record indicates that Defendant's default was culpable or willful; instead, Defendant's averments

8

about why he failed to respond to the Complaint demonstrate that he chose not to respond because he believed he had meritorious service of process and personal jurisdiction defenses."); *West v. USA Gymnastics*, 2018 WL 11652210, at *1 (M.D. Fla. Oct. 3, 2018) (Sneed, Mag. J.) ("Because service of process implicates personal jurisdiction concerns, a court may have good cause to set aside an entry of default where a plaintiff's service of process is insufficient." (citing *Thomas v. Bank of Am., N.A.*, 557 F. App'x 873, 875 (11th Cir. 2014)). Soriana reasonably believed that Mexican defendants couldn't be served by email since this appears to be an unresolved question of federal and international law. *See Mitchell v. Volkswagen Grp. of Am., Inc.*, 753 F. Supp. 2d 1264, 1270 (N.D. Ga. 2010) (Batten, J.) ("Courts seeking to interpret [Mexico's objection to the Hague Convention] have also disagreed on its scope."). And, even if Soriana was mistaken on this point, there is still the second issue of whether an email sent to Claudia Gonzalez—and not any of Soriana's "upper management contacts"—was sufficient to give Soriana fair notice of this lawsuit. Reply at 4. Again, we must emphasize that we aren't taking any position on these service-related issues, we only mean to say that Soriana's default wasn't culpable or willful under these circumstances.

*   *   *

"[D]efaults are seen with disfavor because of the strong policy of determining cases on the merits." *Ehlers*, 8 F.3d at 783. Having reviewed the parties' briefing, we find that Soriana has demonstrated good cause under Rule 55(c) to vacate the default entered against it.

Accordingly, we **ORDER and ADJUGE** as follows:

1. Soriana's Motion to Set Aside Clerk's Default [ECF No. 54] is **GRANTED**. We hereby **VACATE** the February 10, 2025, Clerk's default entered against Soriana [ECF No. 43].
2. ACF's Motion for Default Judgment [ECF No. 49] is **DENIED as moot**.
3. Soriana shall file an answer or response to ACF's Amended Complaint [ECF No. 14] by **May 5, 2025**.

4. The parties are also directed to prepare and file a joint scheduling report, as required by S.D. FLA. L.R. 16.1(b)(2), by **May 5, 2025**. In addition, by **May 5, 2025**, Soriana must file certificates of interested parties and corporate disclosure statements that contain a complete list of persons, associated persons, firms, partnerships, or corporations that have a financial interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to Soriana.

5. The Clerk is directed to **REOPEN** this case.

**DONE AND ORDERED** in the Southern District of Florida on April 21, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record